889 P.2d 621

In the Matter of a Member of the State Bar of Arizona, Gaila Vivian DAVIS, Respondent.

No. SB–94–0070–D.

Disc. Comm. Nos. 89–1783, 90–0791, 90–1800.

Supreme Court of Arizona, En Banc.

Feb. 9, 1995.

Margaret H. Downie, Chief Bar Counsel, Phoenix, for State Bar of Ariz.

Gaila V. Davis, in pro. per.

## OPINION

MOELLER, Vice Chief Justice.

## FACTS AND PROCEDURAL HISTORY

### I. Informal Reprimand and Probation

On September 26, 1991, the State Bar filed a complaint against Gaila Davis.[1] Pursuant to a consent agreement, she conditionally admitted that she had violated Rule 42, Ethical Rules 1.3 (diligence) and 8.1(b) (failure to respond to request from disciplinary authority), Rule 51(h) (failure to respond to bar inquiry), and Rule 51(i) (refusing to cooperate with State Bar), Arizona Rules of Supreme Court. In approving the consent agreement, the State Bar Hearing Committee found that:

> Respondent failed to adequately communicate with opposing counsel in a dissolution matter, and failed to timely file documents, although no prejudice to the client resulted. Respondent also repeatedly failed to timely respond to inquiries and orders from the State Bar.

(Order of Informal Reprimand, Nov. 5, 1992, at 1.) Davis received an informal reprimand and was placed on probation for two years.

The terms of probation, pursuant to the consent agreement, included an initial audit of her law practice by the Law Office Management Assistance Program (LOMAP) of the State Bar, subsequent random audits by LOMAP during the two-year period, prompt responses to all bar inquiries, no ethical violations, and payment of all costs for the disciplinary procedure.

Regarding the audits, respondent failed to make available her trust account records and refused to submit to a follow-up audit, canceling three appointments made by the LOMAP director. She never attempted to reschedule the canceled meetings. She also failed to cooperate with the Bar in fulfilling requests for information about three subsequent complaints by clients. The Bar sent respondent copies of each complaint, along with requests for responses from respondent. After failing to respond to the Bar's first complaint, the Bar subpoenaed respondent to give a deposition. She failed to appear. She promised to submit a written response, but failed to do so. She did not respond to the second complaint and responded to the third complaint in an untimely manner. Furthermore, despite four reminder letters and a warning of a possible suspension, respondent failed, for thirteen months, to pay $426.89 in costs associated with the disciplinary matter.

### II. Action Resulting from Probation Violations

On October 18, 1993, the State Bar filed a Notice of Probation Violation. At the hearing, Davis was found to have violated the terms of her probation. The hearing officer stated:

> Respondent has demonstrated a pattern of unwillingness or inability to comply with the terms of probation imposed upon her previously and an inexplicable inability to cooperate with the State Bar in furtherance of its obligation to investigate subsequent complaints of misconduct brought by her former clients.

(Findings of Fact, Conclusions of Law and Recommendations of Hearing Officer, Jan. 25, 1994, at 8.) The hearing officer recommended a sixty-day suspension, completion of probationary terms, a meeting with the State Bar Membership Assistance Program, and payment of all costs. Davis made no objections to the recommendations, findings of fact, or conclusions of law.

The Disciplinary Commission considered her case and adopted the hearing officer's findings of fact and conclusions of law. After oral argument, the Commission found, in mitigation, that Davis' failure to comply with the probationary terms was not a result of dishonest or selfish motives and that she was experiencing emotional and personal problems during the relevant period. The Com-

---

1. Davis has previously received two informal reprimands. In October 1987 she was informally reprimanded for violating ER 1.3 (diligence) and ER 1.4 (communication), both found within Rule 42, Ariz.R.Sup.Ct. In November 1989 she received a second informal reprimand for violating ER 1.3 and Rule 51(h) (failure to cooperate with a disciplinary investigation).

mission noted that every time a letter arrived from the Bar, her panic increased, rendering her virtually incapable of responding in any manner. (Disciplinary Commission Report, July 5, 1994, at 7.) The State Bar agreed that the paralysis was the root of Davis's problems, rather than her actual practice of law. The Commission also noted in mitigation that Davis took on her own secretarial duties when her secretary became ill. In aggravation, the hearing officer and Commission found that Davis had been informally reprimanded three times, that there was a pattern of misconduct, and that Davis has substantial experience, having been a member of the Arizona Bar since 1974. The Commission found that the aggravators balanced the mitigators, thus requiring no increase or decrease in sanction.

In concluding that a suspension was appropriate, the Commission stated that it "cannot ignore the fact that Davis repeatedly failed to cooperate with the State Bar and that, although not the crux of the problem ..., a number of Davis's clients have been impacted by this same reluctance to act when a situation becomes too stressful." (Disciplinary Commission Report, July 5, 1994, at 8.) In finding that disbarment was inappropriate, the Commission stated that Davis's failures to cooperate were not done with an intent to show disrespect or contempt, but rather were "cries for help." *Id.* at 9. Davis claimed that a suspension would destroy her practice. However, the Commission noted that anything short of suspension was insufficient because Davis had repeatedly violated the probationary terms and been warned that sanctions would be sought. The Commission also found that "Davis is still not fully cognizant of, or lacks the ability to address, the seriousness of her failures to cooperate with the State Bar." *Id.* at 10. The Commission recommended a sixty-day suspension.

## ISSUE

Whether the facts and circumstances of this case warrant a sixty-day suspension from the practice of law.

## DISCUSSION

### I. Standard of Review

■ In disciplinary matters, this court acts as an independent "trier of both fact and law in the exercise of our supervisory responsibility over the State Bar." *In re Neville,* 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). However, we do give deference to and seriously consider the reports of the hearing officer and Commission. *In re Spear,* 160 Ariz. 545, 547, 774 P.2d 1335, 1337 (1989). As this case does not turn on any question of fact, we need only apply the applicable standards to the facts. *In re Redondo,* 176 Ariz. 334, 335, 861 P.2d 619, 620 (1993). Discipline is imposed to protect the public and deter others, rather than to punish the lawyer. *In re Pappas,* 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988).

### II. Analysis

The question of the appropriate sanction for violation of probation where clients may not have been harmed is an issue of first impression in this state. For guidance, we look to the American Bar Association, *Standards for Imposing Lawyer Sanctions* (1991) (*Standards*). *In re Spear,* 160 Ariz. 545, 554–55, 774 P.2d 1335, 1344–45 (1989).

### A. Is Suspension Appropriate?

■ The hearing officer and the Commission considered censure, suspension, and disbarment, and they concluded that suspension is appropriate. The *Standards* provide that:

Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

. . . .

Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

*Standards* 7.2 (Supp.1992) & 8.2 (1991); *see also In re Dwyer,* 176 Ariz. 492, 495, 862 P.2d 865, 868 (1993) (*Standards* 7.2); *In re Redon-*

*do,* 176 Ariz. 334, 338, 861 P.2d 619, 623 (1993) (*Standards* 8.2).

Other states have determined that suspension is appropriate where probation has been violated. *See, e.g., In re Skonnord,* 441 N.W.2d 451 (Minn.1989); *In re Norton,* 112 N.M. 75, 811 P.2d 573 (1991); *Musslewhite v. State Bar,* 786 S.W.2d 437 (Tex.Ct.App.1990), *cert. denied,* 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991). In *In re Johnson,* 414 N.W.2d 199 (Minn.1987), the Minnesota Supreme Court stated that "because some of the respondent's violations occurred while he was already in a disciplinary probation status, the imposition of more onerous sanctions than normally imposed is indicated." *Id.* at 200. Similarly, in *In re Haugen,* 425 N.W.2d 835 (Minn.1988), the same court concluded that "because of [respondent's] existing probationary status, [he] should have taken greater steps to assure compliance with any obligations imposed on him in his capacity as a lawyer." *Id.* at 836.

Regarding Davis, the Commission stated, "the imposition of any sanction less than suspension will only serve to reinforce Davis's mistaken belief that her failure to cooperate with the State Bar's investigations and to comply with probationary terms was not serious misconduct." (Disciplinary Commission Report, July 5, 1994, at 10.) Failure to respond to inquiries from the State Bar shows "a disregard for the Rules of Professional Conduct and borders on contempt for the legal system." *In re Galusha,* 164 Ariz. 503, 505, 794 P.2d 136, 138 (1990). Regarding the discipline of a lawyer previously sanctioned, we have determined that "a graded response from reprimand, to suspension, to disbarment is sometimes appropriate, depending on the severity of the subsequent conduct." *In re Redondo,* 176 Ariz. 334, 338, 861 P.2d 619, 623 (1993); *see also In re Pappas,* 159 Ariz. 516, 527, 768 P.2d 1161, 1172 (1988) ("Failure to cooperate with disciplinary authorities is a significant aggravating factor.").

Here, Davis argues that because her conduct did not harm her clients, she should not be suspended. She suggests that another opportunity to fulfill the prior terms of her probation along with mandated counseling would be sufficient. Though Davis's conduct may not have harmed her clients, she violated the terms of her probation and ignored repeated efforts by the State Bar to fulfill the terms of the probation. *See In re Johnson,* 414 N.W.2d at 202 (though violation may not affect attorney's practice, it may reflect upon the seriousness he gives to similar matters). These violations were especially egregious in light of the fact that Davis was previously reprimanded for "repeatedly failing to timely respond to inquiries and orders from the State Bar." (Findings of Fact, Conclusions of Law and Recommendations of Hearing Officer, Jan. 25, 1994, at 8.) The Commission stated, "Davis will not, or cannot, accept full responsibility for her failures to comply with both the disciplinary orders and the Rules of Professional Conduct." (Disciplinary Commission Report, July 5, 1994, at 8.) Merely extending the probation or adding additional terms would not provide her or other lawyers with a meaningful indication of the seriousness of violating probationary terms and ignoring the State Bar's information requests. *See In re Levine,* 174 Ariz. 146, 175, 847 P.2d 1093, 1122 (1993). Indeed, anything less than suspension would make a mockery of the disciplinary process.

### B. Length of Suspension

Generally, where suspension is deemed appropriate, the *Standards* suggest a minimum suspension of six months. *Standards* 2.3. However, the Commission recommended a sixty-day suspension, noting that, as a solo practitioner, "any suspension will be devastating to her practice ... [and] a six-month suspension would be tantamount to disbarment." (Disciplinary Commission Report, July 5, 1994, at 11.)

We believe the recommended term of suspension is very lenient because this case involves an experienced attorney with repeated disciplinary violations. *See In re Lincoln,* 170 Ariz. 267, 270, 823 P.2d 1275, 1278 (1992) (disbarment where lawyer had prior discipline, failed to cooperate, and had substantial experience); *In re Gaynes,* 168 Ariz. 574, 576, 816 P.2d 231, 233 (1991) (previous informal reprimands, prior discipline for same misconduct, and willful disdain for dis-

ciplinary process led to disbarment). In *In re Levine,* we stated,

> In tailoring the discipline to the unique facts before us, we conclude that a combination of short-term suspension [six months] followed by probation will allow us to structure respondent's sanction toward the goals of discipline without punishing the misconduct.

174 Ariz. at 175, 847 P.2d at 1122. Under the unique circumstances of this case, we agree with the Commission that a suspension for sixty days is an appropriate sanction for Davis's misconduct.

## DISPOSITION

We approve and adopt all the recommendations of the Commission.

1. Respondent is suspended from the practice of law for sixty days.

2. The suspension is effective thirty days from the filing of this opinion, Rule 63(c), Ariz.R.Sup.Ct., giving Davis time to address pending client matters.

3. Regarding notification to clients, Davis must comply with Rule 63, Ariz.R.Sup.Ct., including giving all clients notice by certified or registered mail that she is disqualified from acting as their attorney until she has been reinstated.

4. Prior to reinstatement, Davis must meet with a counselor provided by the State Bar Membership Assistance Program or with a qualified counselor of her choice, who shall report his or her recommendations regarding Davis's behavior to the State Bar. Upon reinstatement, Davis must follow the recommendations of the counselor during the probationary period.

5. Davis is required to pay all costs and expenses incurred by the State Bar in connection with these proceedings.

6. Upon reinstatement, Davis will be on probation for two years, during which all the terms and conditions previously set forth in the November 5, 1992, Order of Informal Reprimand must be followed. These terms are:

    a. Davis will submit to and cooperate with an audit of her law practice by the Director of the Law Office Management Assistance Program (LOMAP) of the State Bar or her designee.

    b. Davis will submit to and cooperate with random audits of her law practice by the LOMAP Director or her designee during the two-year probationary period.

    c. Davis agrees to implement any and all reasonable suggestions made as a result of the initial audit or random audits.

    d. During the probationary term, Davis will accumulate at least six hours of continuing legal education (CLE) relating to law office management, time management, or similar topics. The LOMAP Director and Davis may agree upon suitable programs to satisfy this requirement.

    e. Davis will obtain from the State Bar's CLE department, and review, the audiotaped program entitled, "Anatomy of a Bar Complaint."

    f. Davis will respond promptly to any and all bar inquiries or requests for information during the probationary period.

    g. Davis will commit no ethical violations during the probationary period.

FELDMAN, Chief Justice, and CORCORAN, Justice, ZLAKET and MARTONE, JJ., concur.